UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FRANK JOHNSON,

        Plaintiff,

v.                                  Case No. 3:15-cv-1487-J-39JBT

KENNETH CERT, et al.,

        Defendants.

_____

**<u>ORDER</u>**

**I. Status**

      Plaintiff initiated this case by filing a Complaint (Doc. 1).  He is proceeding on an Amended Complaint (Doc. 5).  He raises a due process claim pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.  He names as Defendants Kenneth Cert, an Investigation Sergeant, and Patricia Rodgers, a Senior Classification Officer.

      Plaintiff is an inmate confined in the Florida Department of Corrections at Lake Correctional Institution.  He provides the following Statement of Claim:

> The actions of defendants Cert, and Rodgers deprived the plaintiff of his right to an adequate investigation in a disciplinary hearing, the right to present documentary evidence in his defense, and the right to and [sic] impartial decision-maker, in violation of the plaintiff's procedural due process rights under the Fourteenth Amendment of the United States Constitution.

Amended Complaint at 4.

      Plaintiff alleges that on February 23, 2014, at South Bay Correctional Institution, Correctional Officer Dormeus claimed that Plaintiff assaulted him.  <u>Id</u>. at 4-5.  Plaintiff was

placed in administrative confinement pending an investigation. Id. at 5. On March 5, 2014, Defendant Cert served Plaintiff with a disciplinary report, charging him with assault or attempted assault of a correctional officer. Id. Plaintiff requested an administrative security videotape as evidence, identifying three security cameras on form DC6-151. Id.

On March 11, 2014, Plaintiff received a disciplinary hearing before Defendant Rodgers and Lieutenant Cole. Id. After the charges were read, Plaintiff pled not guilty and made a statement denying the charge. Id. Plaintiff asked Defendant Rodgers to produce the security videotape findings. Id.

Plaintiff claims the DC6-2028 document concerning the disposition of videotape evidence is incomplete and that Defendant Cert failed in his investigative duties requiring he conduct an adequate investigation, including a thorough review of the requested videotape and the making of findings on the form DC6-2028 as to why the videotape did or did not support the defense. Id. at 6. Plaintiff also claims that Defendant Rodgers did not provide Plaintiff with a valid reason for relying on an incomplete DC6-2028 documentary evidence form, and she failed to postpone the proceeding in order to require further investigation. Id. Plaintiff asserts that Defendant Rodgers simply relied on the officer's statement contained in the disciplinary report. Id.

Plaintiff alleges that the disciplinary team based its decision of guilt on the correctional officer's statement and evidence presented at the hearing. Id. He also alleges that Defendant Rodgers provided a false statement that the team relied on the identified tape or the capabilities of the particular taping equipment, and found that the tape requested does not provide evidence to support Plaintiff's defense. Id. Plaintiff contends that the requested videotape was never reviewed by Defendants Cert or Rodgers, the

investigation was incomplete, and the only evidence presented at the hearing was the disciplinary report. Id.

Plaintiff states that he was found guilty and sentenced to 60 days of disciplinary confinement. Id. at 7. Thereafter, he was sent to unit level one, the most restrictive special housing level, in which he was denied certain privileges regularly received in the general prison population. Id. He was confined to a cell for approximately 22 hours per day, being allowed to exercise three times per week, for two hours each exercise period, and permitted to shower three times per week. Id. He compares this to general population with daily outdoor exercise and social interaction and showers seven times per week. Id. He also complains that Special Housing Unit (SHU) inmates have restricted visitation, library, telephone, and canteen privileges. Id. He states he had limited hygiene and cleaning products, and other activities were restricted, including school, religious services, group meals, and canteen privileges. Id. Plaintiff was in the SHU for 539 days. Id. As relief, Plaintiff seeks compensatory damages, punitive damages, and any additional relief the Court deems just, proper, and equitable. Id. at 8.

## II. Defendant Kenneth Cert

This case has been pending since December 16, 2015. Plaintiff is not proceeding as a pauper. The Court directed that all Defendants be served on or before March 15, 2016, and proof of service and documents reflecting proper, completed service be provided to the Court by March 22, 2016. Order (Doc. 4). Plaintiff was warned that failure to provide proof of proper service for a particular Defendant or failure to show good cause for the failure to effect service would result in the dismissal of that Defendant from this action

without further notice.[1]  Id.  Plaintiff failed to perfect service of process upon Defendant Cert.

The record shows that the process server returned unexecuted the service documents for Defendant Cert.  (Docs. 7 & 8).  Although Plaintiff stated that he would remain diligent and attempt to locate Defendant Cert (Doc. 8), the record demonstrates that as of the date of this order, Plaintiff has not provided proof of proper service for Defendant Cert, nor has Plaintiff shown good cause for the failure to effect service upon him.  Therefore, Defendant Cert will be dismissed without prejudice from this action.

### III.  Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555).

Before the Court is Defendant Rodgers' Amended Motion to Dismiss (Motion) (Doc. 29).  Defendant Rodgers seeks dismissal of the claims against her as barred by the statute of limitations and unexhausted.  She also claims that Plaintiff is not entitled to compensatory and punitive damages.  Finally, she asserts that Plaintiff does not have a

---

[1] Plaintiff filed his Amended Complaint on February 18, 2016.

4

liberty interest sufficient to trigger due process protection because he is serving a life sentence, and he has failed to demonstrate a significant or atypical hardship necessary to invoke the Due Process Clause.

## IV. Statute of Limitations

Defendant Rodgers argues that the applicable statute of limitations is the one-year limitation period found in Florida Statute section 95.11(5)(g), which states in pertinent part: "[A]n action brought by or on behalf of a prisoner[2] . . . relating to the conditions of the prisoner's confinement" must be brought within one year. Plaintiff filed a response in opposition to the Motion, arguing that the applicable statute of limitations is the four-year limitations period found in Florida Statute section 768.28(14). See Plaintiff's Response to Defendant Rodgers' Amended Motion to Dismiss (Doc. 30).

Defendant Rodgers, relying on Green v. Cottrell, 204 So.3d 22 (Fla. 2016), requests that this Court depart from the traditional application of the four-year statute of limitations because Plaintiff has not claimed a physical injury. In Green, the plaintiff raised claims under Florida law of negligence and intentional infliction of emotional distress, but he also raised federal law claims against the jail employees which the circuit court found were governed by the Prison Litigation Reform Act and were unexhausted. The Supreme Court of Florida addressed the statute of limitations issue with regard to the state law claims, not the federal claims.[3]

_____

[2] The term prisoner is defined as "a person who has been convicted of a crime and is incarcerated for that crime or who is being held in custody pending extradition or sentencing." Fla. Stat. § 57.085(1).

[3] The Supreme Court of Florida held that the circuit court erroneously dismissed the federal law claims for failure to exhaust administrative remedies. Green, 204 So.3d at 31.

The Supreme Court of Florida stated that "unless **the state law claims** raised by Green fall under section 95.11(5)(g), the four-year statute of limitations in section 768.28(14) is applicable to his action." Id. at 27.       The Green case, on which Defendant Rodgers heavily relies, applied the four-year limitations period to state law claims "where . . . a prisoner files an action alleging that he suffered physical injury due to the negligent or wrongful acts or omissions of the employees of a government entity[;]" however, the court found if the prisoner alleges mental or emotional injury alone, the one-year limitations period is applicable to the state-law claim. Id. at 29. Thus, Green does not mandate that this Court apply the one-year limitation period to Plaintiff's federal claims.[4]

"Claims brought pursuant to 42 U.S.C. § 1983 are subject to the statute of limitations period governing personal injury actions in the state where the action is brought." Wellons v. Comm'r, Ga. Dep't of Corr., 754 F.3d 1260, 1263 (11th Cir. 2014) (citation omitted), cert. denied, 134 S.Ct. 2838 (2014); see Owens v. Okure, 488 U.S. 235, 249-50 (1989) ("We accordingly hold that where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions."). In Florida, "[t]he applicable statute of limitations in a § 1983 lawsuit is the four-year Florida state statute of limitations for personal injuries." Omar v. Lindsey, 334 F.3d 1246, 1251 (11th Cir. 2003) (per curiam) (citations omitted); see Van Poyck v. McCollum, 646 F.3d 865, 867 (11th Cir. 2011) (recognizing that a § 1983

---

[4] See generally Wilkins v. Monastero, No. 3:09CV61/RV/MD, 2010 WL 3257731, at *3 (N.D. Fla. July 16, 2010), report and recommendation adopted, 2010 WL 3257726 (N.D. Fla. Aug. 17, 2010) ("Although Congress permits federal courts to borrow state limitations periods, neither Congress nor the Supreme Court has authorized states to unilaterally create limitations periods specifically and exclusively applicable to section 1983 actions within a particular state.").

claim is subject to Florida's four-year personal injury statute of limitations); Howard v. Highsmith, No. 8:10-cv-1533-T-30TGW, 2011 WL 535863, at * 3 (M.D. Fla. Oct. 31, 2011) (recognizing that in Rogers v. Judd, 389 F. App'x 983 (11th Cir. 2010) (per curiam), the Eleventh Circuit applied the one-year limitation period in section 95.11(5)(g) to a prisoner's state law claims, but not to the prisoner's Eighth Amendment claim); City of Hialeah, Fla. v. Rojas, 311 F.3d 1096, 1103 (11th Cir. 2002) ("Section 1983 claims are governed by the forum state's residual personal injury statute of limitations, which in Florida is four years.").

Plaintiff does not raise a state law claim in his Amended Complaint. Upon review, this Court disagrees with Defendant Rodgers as to the applicability of the one-year limitation period to a federal claim of constitutional deprivation. As to Plaintiff's federal due process claim under § 1983, this Court is not inclined to depart from the traditional application of the four-year statute of limitations. See Ealy v. GEO Grp., Inc., No. 14-14199, 2016 WL 3553141, at *1 (11th Cir. June 30, 2016) ("This Court has on several occasions applied the four-year residual limitations period under Florida's personal injury statute . . . to 42 U.S.C. § 1983 claims."); Hamze v. Cummings, No. 15-10868, 2016 WL 3383373, at *3 (11th Cir. June 20, 2016) (applying Florida's four-year statute of limitations to a claim for failure to protect brought by a pretrial detainee pursuant to § 1983); Ellison v. Lester, 275 F. App'x 900, (11th Cir. 2008) (per curiam) (reversing the district court's finding of untimeliness in a section 1983 case, finding the four-year statute of limitations applicable to section 1983 claims arising in Florida).

Therefore, Defendant Rodgers' Motion, claiming the case was filed beyond the statute of limitations, is due to be denied.

## V. Exhaustion of Administrative Remedies

7

Defendant Rodgers contends that Plaintiff failed to exhaust his administrative remedies prior to filing suit regarding his due process claim, and she seeks the dismissal of that claim pursuant to 42 U.S.C. § 1997e(a). Motion at 3-6. More specifically, Defendant Rodgers asserts that Plaintiff failed to properly exhaust the issue alleged in this lawsuit. See Defendant's Exhibit B, Declaration of Justin Davis (Declaration) (Doc. 29-2 at 1). Upon review, the motion to dismiss for failure to exhaust administrative remedies, a matter in abatement, is due to be denied. An explanation follows.

The exhaustion of available administrative remedies is required before a 42 U.S.C. § 1983 action with respect to prison conditions by a prisoner may be initiated in this Court. Guidelines for reviewing a prisoner civil rights action are set forth in the Prison Litigation Reform Act:

> Before a prisoner may bring a prison-conditions suit under § 1983, the Prison Litigation Reform Act of 1995 requires that he exhaust all available administrative remedies. 42 U.S.C. § 1997e(a); see also Booth v. Churner, 532 U.S. 731, 736, 121 S.Ct. 1819, 1822, 149 L.Ed.2d 958 (2001). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387, 165 L.Ed.2d 368 (2006) (quotation omitted). To properly exhaust, a prisoner must "[c]ompl[y] with prison grievance procedures." Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 922–23, 166 L.Ed.2d 798 (2007).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1208 (11th Cir. 2015).

The Court will employ a two-step process in undertaking its review:

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these

administrative remedies. See Turner,[5] 541 F.3d at 1081. In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley, 802 F.3d at 1209.

Several factors guide the Court. The Court recognizes that exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the Prison Litigation Reform Act. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir.), cert. denied, 555 U.S. 1074 (2008); Jones v. Bock, 549 U.S. 199, 211 (2007); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.") (citation omitted). The Supreme Court has stated that "failure to exhaust is an affirmative defense under the PLRA[.]" Jones v. Bock, 549 U.S. at 216. However, "the PLRA exhaustion requirement is not jurisdictional[.]" Woodford v. Ngo, 548 U.S. at 101. See Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (recognizing that the defense "is not a jurisdictional matter").

Of note, a prisoner must completely exhaust his remedies prior to initiating a suit in federal court. If he fails to complete the process, the civil rights complaint must be dismissed. This is true even if he thereafter exhausts his administrative remedies after

_____

[5] Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008).

initiating his action in federal court.  See Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006) (per curiam); Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003); McKinney v. Carey, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (per curiam); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Jackson v. Dist. of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 538 (7th Cir. 1999).

Additionally, "the PLRA exhaustion requirement requires proper exhaustion." Woodford, 548 U.S at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims.  Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."  Pozo,[6] 286 F.3d, at 1024. . . .

Id. at 90.  Also of significance, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."  Id.

Again, Plaintiff is not required to plead exhaustion.  Plaintiff, in his Reply Response to Defendant's Motion to Dismiss (Reply) (Doc. 23), states that he exhausted his administrative remedies and references the re-filed appeal to the Secretary dated April 30, 2014.  Reply at 3; Plaintiff's Exhibit C (Doc. 23-3).  He alleges that he re-filed his appeal to the Secretary in a timely manner and delivered the appeal to prison officials for mailing on April 30, 2014.  Reply at 3.

---

[6] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir.), cert. denied, 537 U.S. 949 (2002).

There are disputed issues of fact as to whether Plaintiff exhausted all available administrative remedies. Thus, the Court must now make findings on the disputed issues of fact to decide whether he properly exhausted his administrative remedies.[7] The Florida Department of Corrections (FDOC) provides an internal grievance procedure. See Chapter 33-103, Florida Administrative Code (F.A.C.). Thus, to determine whether Plaintiff exhausted his administrative remedies, this Court must examine relevant documents to determine whether the incidents in question were grieved. If these incidents were grieved and the documents complied with the deadlines and other procedural rules as set forth in the F.A.C., the issues raised therein are exhausted.

Generally, the FDOC provides a three-step grievance procedure. The Eleventh Circuit succinctly described the administrative grievance procedure available to the inmates confined in the Florida penal system, including the procedure for medical grievances:

> In Florida, the grievance process consists of a three-step procedure. An inmate must first file an "informal grievance ... to the staff member who is responsible in the particular area of the problem." Fla. Admin. Code Ann. § 33–103.005(1). The second step requires the inmate file a formal grievance with the warden. Id. § 33–103.006(1)(a). If the inmate is unsuccessful at this point, he may submit an appeal to the Secretary of the DOC. Id. § 33–103.007.
>
> Medical grievances require only a two-step procedure: the inmate must file a formal grievance at the institutional level with the chief health officer. If the inmate is unsuccessful, he may file an appeal with the Secretary. Id. § 33–103.008.

---

[7] Since the parties have not requested an evidentiary hearing on this issue and they have submitted evidence for the Court's consideration, the Court proceeds to resolve the material questions of fact based on the documents before the Court. Bryant, 530 F.3d 1377 n.16 (recognizing that a district court may resolve material questions of fact on the submitted papers when addressing the Prison Litigation Reform Act's exhaustion of remedies requirement).

Kozuh v. Nichols, 185 F. App'x 874, 877 (11th Cir. 2006) (per curiam), cert. denied, 549 U.S. 1222 (2007).

Defendant Rodgers contends that Plaintiff filed two grievance appeals related to the disciplinary report received February 23, 2014, log numbers 14-6-10387 and 14-6-12138. Motion at 5; Declaration. Defendant Rodgers asserts that these grievance appeals did not constitute exhaustion because they were returned without action. See Defendant's Exhibit B (Doc. 29-2 at 4, 17). To challenge the Defendant's position, Plaintiff, in his Reply, provides an additional grievance appeal that he submitted to the Secretary pertaining to his disciplinary proceeding. Plaintiff's Exhibit C (Doc. 23-3).

Plaintiff contends that the record shows that on April 30, 2014, Plaintiff submitted to the Secretary a re-filed Request for Administrative Remedy or Appeal (Doc. 23-3), labeled "Re-filed Appeal." Id. Plaintiff explains that he "re-filed his appeal to the Secretary of FDOC in a timely manner after correcting the stated deficiency in accordance with F.A.C. Rule 33-103.014(1)(2)(5) and delivered the appeal to prison officials for mailing April 30, 2014 (See Exhibit C)[.]" Reply at 3. Plaintiff did not receive a response to this re-filed appeal. Id. As a result, on July 16, 2015, he filed another grievance appeal to the Secretary complaining about the lack of a response to his re-filed appeal. Plaintiff's Exhibit D (Doc. 23-4). This grievance appeal was returned without action as previously addressed in appeal log number 14-6-13087. Plaintiff's Exhibit E (Doc. 23-5).

In light of Plaintiff's submission of the re-filed appeal complaining about the disciplinary proceeding, the Court is not convinced that the Defendant has provided sufficient supporting documents demonstrating complete lack of exhaustion. Based on all reasonable inferences, Plaintiff has shown that he properly re-filed the appeal of the

disciplinary proceeding.  See Defendant's Exhibit B (Doc. 29-2 at 17) (noting that Plaintiff could file a new appeal and the re-filed appeal would be addressed if within the time frame and other requirements established by rule).  Based on the record before the Court, the Court is unable to conclude that Plaintiff failed to exhaust his administrative remedies in compliance with the procedural rules.  Therefore, the Court concludes that Rodgers' Motion should be denied with regard to the assertion that Plaintiff failed to exhaust his administrative remedies.  It appears that Plaintiff attempted to avail himself of the administrative grievances process and he sufficiently and adequately raised his claim through the administrative grievance process.

## VI.  Compensatory or Punitive Damages

Defendant Rodgers moves to dismiss Plaintiff's claim for compensatory and punitive damages.  Motion at 6-9.  In Napier v. Preslicka, 314 F.3d 528, 531-32 (11th Cir. 2002), cert. denied, 540 U.S. 1112 (2004), the Eleventh Circuit addressed the requirements of 1997e(e):

> Subsection (e) of 42 U.S.C. § 1997e states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  This statute is intended to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints.  See Harris v. Garner, 216 F.3d 970, 976-79 (11th Cir. 2000) (en banc) (surveying the legislative history of the PLRA).  An action barred by § 1997e(e) is barred only during the imprisonment of the plaintiff; therefore, such action should be dismissed without prejudice by the district court, allowing the prisoner to bring his claim once released and, presumably, once the litigation cost-benefit balance is restored to normal.  Id. at 980.

> Tracking the language of the statute, § 1997e(e) applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody. In Harris, we decided that the phrase "Federal civil action" means all federal claims, including constitutional claims. 216 F.3d at 984-85.

Plaintiff alleges no physical harm. Therefore, the action for compensatory and punitive damages is barred by 42 U.S.C. § 1997e(e), as long as he remains incarcerated. See Al-Amin v. Smith, 637 F.3d 1192, 1196-98 (11th Cir. 2011) (finding that compensatory and punitive damages are precluded under the Prison Litigation Reform Act in a civil rights action claiming a First Amendment violation, with no physical harm).

Of import, however, Plaintiff also seeks "[a]ny additional relief as this Court deem[s] just, proper, and equitable." Amended Complaint at 8. Liberally construed, such a prayer for relief could include a request for nominal damages. Hale v. Sec'y for Dep't of Corr., 345 F. App'x 489, 492 (11th Cir. 2009) (per curiam). Thus, Plaintiff could be entitled to nominal damages if he prevailed at trial. As such, 42 U.S.C. § 1983 does not provide a basis for dismissing the case at this time based on the request for damages.

## VII. Due Process

Defendant Rodgers succinctly describes Plaintiff's due process claim, noting that Plaintiff is claiming a violation of constitutional rights under the Fourteenth Amendment because Rodgers participated on the disciplinary hearing team that found Plaintiff guilty of assaulting an officer, with the disciplinary team relying on insufficient evidence and failing to suspend the hearing for further investigation. Motion at 9. Of significance, Plaintiff is serving a life sentence. Defendant's Exhibit A (Doc. 29-1). Therefore, he does not earn gain time, and the disciplinary decision requiring forfeiture of 180 days of gain time had

absolutely no affect on Plaintiff's length of sentence.  See Defendant's Exhibit B (Doc. 29-2 at 12).  As such, Plaintiff does not have standing to seek expungement of his prison disciplinary report with a loss of gain time because it does not affect the fact or duration of his life sentence.  Rowan v. Harris, 316 F. App'x 836, 838 (11th Cir. 2008) (per curiam) ("[A]s a life inmate in the Florida prison system, we fail to see how expungement of Rowan's disciplinary record creates a justiciable case or controversy."), cert. denied, 555 U.S. 1000 (2008).  See Batie v. Fla. Dep't of Corr., No. 1:06-cv-62-MP-AK, 2009 WL 1490683, at *3 (N.D. Fla. May 22, 2009) (noting that if a petitioner has completed the term of disciplinary confinement at the time of the filing of the petition, the cause is moot unless the disciplinary conviction affected the duration of imprisonment, which is not the case for a life-sentenced inmate).

Apparently, Plaintiff recognizes this fact because he does not mention the forfeiture of gain time in his Amended Complaint.  He only references the punishment of 60 days disciplinary confinement.  Amended Complaint at 7.  Plaintiff suggests, however, that he satisfies the requirement of demonstrating a significant or atypical hardship necessary to invoke the Due Process Clause because he was "subsequently placed in the most restrictive special housing unit level (1) which further deprived the Plaintiff of certain privileges and loss of limited liberty endured by prisoners in general population."  Id. at 7.

This contention does not win the day.  First of all, Plaintiff was not sentenced to SHU by the disciplinary team.  The record shows that the team sentenced him to a loss of 180 days of gain time and 60 days disciplinary confinement.  Defendant's Exhibit B (Doc. 29-2 at 12).

Plaintiff relies on his subsequent placement on Close Management (SHU) confinement, which is based on a classification decision to place an inmate apart from the general population for reasons of security or the order and effective management of the institution, to make his due process claim. <u>See</u> Rule 33-601.800(1)(d), Fla. Admin. Code; Motion at 2 n.1. The most restrictive of these non-punitive Close Management levels is CMI, "being the most restrictive single cell housing level." Rule 33-601.800(1)(e), Fla. Admin. Code. Placement on Close Management is a housing assignment made by the Classification Team, not a disciplinary team. Rule 33-601.800(1)(k). Upon review, Plaintiff has not alleged that Defendant Rodgers, or Defendant Cert for that matter, served on the Classification Team that placed him on Close Management confinement or had anything to do with his housing assignment or custody level.

Defendant Rodgers action of finding Plaintiff guilty of a disciplinary infraction and sentencing him to 60 days of disciplinary confinement did not impose an atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life. <u>See</u> <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995) (holding that the prisoner's thirty-day disciplinary segregation "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"); <u>Wilson v. Blankenship</u>, 163 F.3d 1284, 1295 n.17 (11th Cir. 1998) (finding the due process clause does not create a liberty interest in being confined in general population rather than administrative segregation); <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983) (receded from by <u>Sandin</u>) (an inmate has no liberty interest in being confined in general population rather than in the more restrictive atmosphere of administrative or disciplinary confinement).

Moreover, "[t]he Due Process Clause does not create an enforceable liberty interest in freedom from restrictive confinement while a prisoner is incarcerated." Woodson v. Whitehead, No. 16-13278, 2016 WL 7367780, at * (11th Cir. Dec. 20, 2016) (per curiam) (citing Hewitt v. Helms, 459 U.S. at 468). Even assuming Defendant Rodgers had some say in Plaintiff's placement in Close Management (SHU) confinement, the Due Process Clause does not create a liberty interest in being confined in general population rather than the more restrictive administrative segregation. Based on the reasoning of Sandin and its progeny, Defendant Rodgers' Motion is due to be granted. In light of the foregoing, it is

ORDERED:

1. Defendant Kenneth Cert is **DISMISSED** from this action **without prejudice**.

2. Defendant Rodgers' Amended Motion to Dismiss (Doc. 29) is **GRANTED as stated in the Order**. Defendant Patricia Rodgers is **DISMISSED** from this action **with prejudice**. The **Clerk** shall enter judgment accordingly.

3. The **Clerk** shall terminate all pending motions and close this case.

**DONE AND ORDERED** in Jacksonville, Florida, this 13th day of April, 2016.

_____
BRIAN J. DAVIS
United States District Judge

sa 4/11
c:
Frank Johnson
Counsel of Record

17